IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**
**FOR THE USE OF S. H. ANTHONY, INC.**                                                **PLAINTIFF**

**V.**                                        **CIVIL ACTION NO. 1:15-CV-128-KS-RHW**

**SAUER INCORPORATED,** *et al.*                                                        **DEFENDANTS**

<u>MEMORANDUM OPINION AND ORDER</u>

For the reasons below, the Court **denies** Hartford Fire & Insurance Company's Motion for Summary Judgment [104].

<u>I. BACKGROUND</u>

On August 3, 2012, Sauer Inc. contracted with NASA to upgrade the potable water system at the John C. Stennis Space Center in Hancock County, Mississippi. On August 14, 2012, Sauer entered into a subcontract with S. H. Annthony, Inc. ("SHA"), and SHA agreed to perform a portion of the work under Sauer's contract with NASA. On September 7, 2012, SHA obtained a performance bond from The Hartford Fire Insurance Company with respect to its obligations under the subcontract with Sauer.

On September 30, 2014, NASA and Sauer modified the primary contract, extending the project completion date to December 1, 2014. On October 8, 2014, Sauer sent a "cure notice" to SHA that referred to a "lengthy list of deficiencies" in the work and specifically mentioned several items. *See* Exhibit G to Motion for Summary Judgment, *USA ex rel. S. H. Anthony, Inc. v. Sauer, Inc.*, No. 1:15-CV-128-KS-RHW (S.D. Miss. Sept. 9, 2016), ECF No. 104-7. Sauer gave SHA three days to cure the deficiencies or be declared in default. A copy of the letter was sent to Hartford.

On October 13, 2014, Sauer sent SHA a "notice of default." *See* Exhibit H to Motion for Summary Judgment, *USA ex rel. S. H. Anthony, Inc. v. Sauer, Inc.*, No. 1:15-CV-128-KS-RHW (S.D. Miss. Sept. 9, 2016), ECF No. 104-8. Sauer represented that SHA's response to the "cure notice" failed to address all of the concerns outlined therein. Sauer declared SHA to be in default under the subcontract, and represented that it intended to exercise its supplementation rights with respect to several of the alleged deficiencies.

On November 25, 2014, SHA completed the project, and NASA began using the upgraded potable water system. In December 2014, Sauer discovered certain alleged problems with the upgrades. Without notice to SHA or Hartford, Sauer hired another subcontractor to fix the problems. In February 2015, Sauer wrote Hartford and demanded payment under the performance bond for SHA's default on the subcontract and its resulting cost in supplementing SHA's work.

In April 2015, SHA filed its Complaint [1] against Sauer. SHA alleged that it completed the work required by the subcontract, but that Sauer failed to pay it $754,406.28 due thereunder. SHA asserted the following claims: breach of contract, quantum meruit, and a claim on the payment bond under the Miller Act. *See* 40 U.S.C. § 3133. It seeks compensatory damages of $754,406.28, plus interest, costs, and attorney's fees.

Sauer later filed its own Amended Counterclaim [22] against SHA and Hartford. Sauer alleges that SHA breached the subcontract in various ways, and that Hartford breached the performance bond by failing to meet its obligations as surety. Sauer

2

asserted the following counterclaims: breach of contract and breach of performance bond. It seeks compensatory damages, interest, costs, and attorney's fees. It also seeks a declaratory judgment that the performance bond issued by Hartford obligates both SHA and Hartford to indemnify Sauer for any damages incurred as a result of SHA's failure to perform the work required by the subcontract.

Hartford filed a Motion for Summary Judgment [104] as to Sauer's counterclaim against it. The motion is ripe for review.

## II. STANDARD OF REVIEW

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc.*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010).

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately

substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

### III. DISCUSSION

Hartford argues that it is not liable under the performance bond because Sauer failed to provide sufficient notice of SHA's default, citing *L & A Contracting Co. v. S. Concrete Servs., Inc.*, 17 F.3d 106 (5th Cir. 1994). There, the Fifth Circuit held that a "declaration of default sufficient to invoke [a] surety's obligations under [a] bond must be made in clear, direct, and unequivocal language. The declaration must inform the surety that the principal has committed a material breach . . . of the subcontract, that the obligee regards the subcontract as terminated, and that the surety must immediately commence performing under the terms of its bond." *Id.* at 111. Sauer sent copies of both the October 8, 2014, "cure notice" and the October 13, 2014, "notice of default" to Hartford. But neither letter was addressed to Hartford or included a demand that Hartford "immediately commence performing under the terms of its bond." *Id.* Accordingly, Hartford argues that Sauer provided insufficient notice of SHA's default.

The "issuance of a surety bond creates a contractual relationship between the surety and its principal." *Fid. & Guar. Ins. Co. v. Blount*, 63 So. 3d 453, 460 (Miss. 2011). "Accordingly, the suretyship relationship, being contractual in nature, is governed by the familiar rules of contract law." *Id.* at 461.

Mississippi courts employ "a three-tiered approach to contract interpretation." *Tupelo Redevelopment Agency v. Abernathy*, 913 So. 2d 278, 284 (Miss. 2005). "First, the 'four corners' test is applied, wherein the reviewing court looks to the language that the

4

parties used in expressing their agreement." *Id.* The court should "read the contract as a whole, so as to give effect to all of its clauses." *Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc.*, 857 So. 2d 748, 752 (Miss. 2003). "When an instrument's substance is determined to be clear or unambiguous, the parties' intent must be effectuated." *Pursue Energy Corp. v. Perkins*, 558 So. 2d 349, 352 (Miss. 1990). Second, a court should look to "the discretionary canons of contract construction" if the parties' intent remains unclear or illusive after reading the instrument. *Austin v. Carpenter*, 3 So. 3d 147, 150 (Miss. Ct. App. 2009). Third, "if the contract continues to evade clarity as to the parties' intent, the court should consider extrinsic or parol evidence." *Royer Homes*, 857 So. 2d at 753. Strict adherence to this framework is not required in all circumstances, *see Pursue Energy*, 558 So. 2d at 351, but "[t]he primary purpose of all contract construction principles and methods is to determine the intent of the contracting parties." *Houston v. Willis*, 24 So. 3d 412, 419 (Miss. Ct. App. 2009).

Here, the Court does not need to look beyond the plain language of the performance bond. The bond provides, in relevant part:

> Whenever Principal [SHA], shall be, and be declared by Obligee [Sauer] to be in default under the subcontract, the Obligee having performed Obligee's obligations thereunder:
>
> > (1) Surety [Hartford] may promptly remedy the default subject to the provisions of paragraph 3 herein, or;
> >
> > (2) Obligee after reasonable notice to Surety may, or Surety upon demand of Obligee may arrange for the performance of Principal's obligation under the subcontract subject to the provisions of paragraph 3 herein;
> >
> > (3) The balance of the subcontract price, as defined below, shall

>be credited against the reasonable cost of completing performance of the subcontract. If completed by the Obligee, and the reasonable cost exceeds the balance of the subcontract price, the Surety shall pay to the Obligee such excess, but in no event shall the aggregate liability of the Surety exceed the amount of this bond. If the Surety arranges completion or remedies the default, that portion of the balance of the subcontract price as may be required to complete the subcontract or remedy the default and to reimburse the Surety for its outlays shall be paid to the Surety at the times and in the manner as said sums would have been payable to Principal and there been no default under the subcontract.

Therefore, according to the performance bond, Hartford's obligations are triggered by 1) SHA's default on the subcontract, 2) Sauer's declaration of SHA's default, and 3) Sauer having performed its obligations under the subcontract. If those three conditions are met, there are three options: 1) Hartford may remedy the default; 2) Sauer may arrange for another party to perform SHA's obligations under the subcontract; or 3) Hartford may, upon Sauer's demand, arrange for another party to perform SHA's obligations under the subcontract. Each option is subject to the payment provisions of paragraph 3, cited above.

The performance bond did not impose any additional requirements on Sauer beyond the ones cited above. It did not require Sauer to formally demand that Hartford "immediately commence performing under the terms of its bond." *L & A Contracting*, 17 F.3d at 111. *L & A Contracting, Co. v. S. Concrete Servs., Inc.*, 17 F.3d 106 (5th Cir. 1994), is distinguishable in that it was decided under Florida law. *Id.* at 109 n. 2.[1] The

---

[1]To the extent other District Judges in this state have applied *L & A Contracting* in cases decided under Mississippi law, the undersigned judge

parties agree that Mississippi law applies, and under Mississippi law, performance bonds are "governed by the familiar rules of contract law." *Blount*, 63 So. 3d at 461. Accordingly, the Court declines to impose extra-contractual duties on performance bond claimants, as Hartford urges.

Hartford also argues, in the alternative, that it is not liable for any damages that arose prior to the October 13, 2014, notice of default sent to SHA. Again, the Court looks to the terms of the contract to determine Hartford's obligations. *Id*. Paragraph 3 of the performance bond, quoted above, addresses the terms of payment under the performance bond. Neither party adequately addressed this contract language in briefing or applied it to the actual facts of the case. Therefore, the Court declines to address the question here.

## IV. CONCLUSION

For these reasons, the Court **denies** Hartford Fire & Insurance Company's Motion for Summary Judgment [104].

SO ORDERED AND ADJUDGED, on this, the 7th day of December, 2016.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE

---

respectfully disagrees with them. *See, e.g. C & I Entm't, LLC v. Fid. & Deposit Co. of Maryland*, No. 1:08-CV-16-DMB-DAS, 2014 WL 3640790 (N.D. Miss. July 22, 2014).